UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRELL EDWARD JONES,

                Plaintiff,

v.

PAUL MASIELLO, et al.,

                Defendants.

CASE NO. 3:19-CV-5954-JLR-DWC

REPORT AND RECOMMENDATION

Noting Date: September 17, 2021

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Currently pending before the Court is the motion of defendants Paul Massiello, Jeffrey Schaap, Michael Mohr, Jeffrey Humphrey and Lewis County for summary judgment. Dkt. 51.

Plaintiff Terrell Jones, a former prisoner proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983 alleging defendants violated his constitutional rights when he was prosecuted for violation of an order of protection (the "no-contact order prosecution"), of which he was ultimately acquitted. Dkt. 41. Defendants seek summary judgment, arguing certain defendants are entitled to absolute immunity, others to qualified

REPORT AND RECOMMENDATION - 1

1  immunity and plaintiff has not established the requisites for municipal liability against Lewis
2  County. In addition, plaintiff has not established the requisites for municipal liability against
3  Pierce County.
4      Because defendants Schaap and Masiello are entitled to absolute immunity, the Court
5  recommends the claims for damages against them be dismissed with prejudice. Because plaintiff
6  has not established the violation of a clearly established right, the Court recommends dismissal
7  of the claims for damages against defendants Humphrey and Mohr on the ground of qualified
8  immunity. Furthermore, plaintiff has failed to establish plaintiff's constitutional rights were
9  violated due to an official custom or policy of defendants Lewis County and Pierce County, and
10 therefore the Court recommends the claims against them be dismissed. [1]

## I. PROCEDURAL HISTORY

12     Plaintiff initiated this matter on October 7, 2019.  Defendants Schaap, Masiello, Mohr,
13 Humphrey and Lewis County filed their motion for summary judgment, together with a
14 supporting declaration and a *Rand* notice, on December 17, 2020. Dkts. 51, 52, 53. In response
15 to requests from plaintiff, the Court granted multiple extensions of the deadline for plaintiff to
16 respond. Dkts. 58, 60, 63. The Court's most recent order granted a continuance to June 25, 2021
17 and warned no further continuances would be granted. Dkt. 63. Plaintiff has not filed any papers
18 in response to defendants' motion; however, plaintiff's amended complaint is signed under
19 penalty of perjury and constitutes evidence. Dkt. 41 at 60.[2]

---

[1] The Court notes Pierce County was only recently added as a defendant and has not been served with process or appeared in this matter. For the reasons discussed in Section IV.D.2, the Court recommends that Pierce County be dismissed without prejudice.

[2] Because Plaintiff is *pro se* and signed his amended complaint under penalty of perjury, the Court considers factual contentions in the complaint as evidence to the extent they "are based on personal knowledge and set forth facts that would be admissible in evidence." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

REPORT AND RECOMMENDATION - 2

## II. FACTS

Plaintiff, a former prisoner, brings claims arising out of the no-contact order prosecution, in which he was acquitted after a jury trial. Dkt. 41. Plaintiff's amended complaint brings claims against individual defendants Jeffrey Schaap (the Lewis County deputy prosecuting attorney who tried the case), Paul Masiello (a Lewis County deputy prosecutor who appeared as a witness at the trial), and Lewis County detectives Michael Mohr (who investigated the matter) and Jeffrey Humphrey (who was present during an interview of defendant Masiello by plaintiff's criminal defense counsel). *Id*. Plaintiff's amended complaint also adds claims against Lewis County (where plaintiff was tried for allegedly violating the no-contact order) and Pierce County (where the underlying no-contact order was issued). *Id*. Plaintiff contends defendants violated his Fourteenth, Sixth, Fifth and Fourth Amendment rights by: (1) failing to search for and to preserve video surveillance evidence plaintiff contends contradicts a witness statement by the party protected by the no-contact order; (2) tardily disclosing defendant Masiello as a witness and conspiring to present false testimony from him; and (3) failing to place defendant Masiello under oath when he was interviewed by plaintiff's criminal defense counsel. *Id*. at 11–15, 32, 46, 51–54, 56–57. Plaintiff further alleges the County defendants violated his rights when their employees failed to follow County policy. *Id*. at 33, 39, 42–43, 55.

Plaintiff's amended complaint alleges he was in a Lewis County courtroom on April 11, 2017 on an unrelated matter when Tara Hopgood, the subject of an order of protection against plaintiff, sat next to him and "stalked" him. Dkt. 41 at 5. Plaintiff first contends courthouse parking lot security video would establish he arrived separately from Ms. Hopgood and would contradict Ms. Hopgood's statement to defendant Mohr that, at plaintiff's request, she drove plaintiff to his court appearance. *Id*. at 5–11. Plaintiff contends defendants failed to consider the

relevance of the video footage and failed to preserve it before it would be recorded over. *Id*. Second, plaintiff alleges that, as his scheduled bench trial was imminent, defendants tardily disclosed defendant Masiello would be a witness. *Id.* at 11–12; 46. Plaintiff further contends the testimony defendant Masiello presented at trial—that he had observed plaintiff sitting next to Ms. Hopgood in the courtroom and conversing with her—was false and contradicted an earlier statement to plaintiff's prior criminal defense counsel. *Id.* After the disclosure of defendant Masiello as a witness, plaintiff requested new defense counsel and a jury trial, both of which were granted. *Id*. at 12–13, 46–52; Dkt 52 at 29. Ultimately, the jury acquitted plaintiff of the charge he had violated the no-contact order. *Id*. at 59.

Defendants' unrebutted evidence shows the no-contact order prosecution arose after the Honorable R.W. Buzzard, who was presiding over plaintiff's April 11, 2017 hearing, observed plaintiff to be in contact with Tara Hopgood, who was the subject of an order of protection against plaintiff. Dkt. 52 at 10. Defendant Mohr was called to investigate the matter, spoke with Judge Buzzard and plaintiff, and interviewed Ms. Hopgood—who stated she had provided plaintiff a ride to court at his request. *Id*. at 35–37. Defendant Schaap quoted from Mohr's investigative report—which presented the information provided by both Judge Buzzard and Ms. Hopgood—in an affidavit supporting probable cause. *Id*. at 10–11. A Lewis County Superior Court judge found probable cause existed to detain plaintiff on the charge he had violated the order protecting Ms. Hopgood. *Id*. at 13.

Defendant Mohr states his investigation focused upon the presence of plaintiff with Ms. Hopgood in the courtroom—not on whether they had arrived together. Dkt. 47 at 22. Defendant Mohr therefore did not retrieve video footage as part of his investigation because "it did not cross my mind as being relevant or potentially exculpatory: the allegation was there were two people

violating a protective order in the Lewis County District Court courtroom," Dkt. 47 at 22. Defendant Schaap was not informed of and never possessed any video footage, and states plaintiff's arrest was not based solely upon Ms. Hopgood's statement. Dkt. 47 at 13.

Shortly before the scheduled October 2, 2017 trial date, Defendant Masiello overheard Defendant Schaap discussing the matter and informed Schaap he had been in the courtroom on the day in question and had witnessed the alleged violation. Dkt. 47 at 15. Defendant Schaap, who had previously been unaware of Defendant Masiello's evidence, filed an updated witness list disclosing Defendant Masiello as a witness on September 19, 2017, thirteen days before the trial date and within the time prescribed for witness disclosure by the scheduling order in the case. Dkt. 52 at 15.

Prior to the disclosure of defendant Masiello as a witness in the no-contact order matter, plaintiff had been represented by five different appointed attorneys and the trial date had been reset and speedy trial waived several times. Dkt. 52 at 2–3. Plaintiff had initially waived his right to jury trial, but revoked the waiver and requested (and was provided) his sixth new counsel after defendant Masiello was disclosed as a witness. Dkt. 52 at 3, 27, 29. On January 10, 2018, plaintiff's new defense counsel conducted an interview of defendant Masiello, which was recorded by defendant Humphrey and attended by plaintiff's investigator and defendant Schaap. Dkt. 41 at 17–31. Defendant Masiello stated he had been in the courtroom on the day in question and had observed plaintiff sitting next to Ms. Hopgood and speaking with her before his case was called. *Id*. When asked why he had not told plaintiff's previous defense counsel he had seen plaintiff and Ms. Hopgood conversing, Massiello stated that prior counsel had indicated he was interested in whether plaintiff and Ms. Hopgood had arrived and/or departed together, not in

what had taken place in court; Masiello denied he had deliberately withheld any information. Dkt. 41 at 25–26, 30.

The jury trial took place on January 18 and 19, 2018. Dkt. 52 at 49–56. The prosecution presented the testimony of Judge Buzzard, defendant Maseillo and defendant Mohr; the defense presented the testimony of plaintiff and two of his prior defense counsel. *Id*. Ms. Hopgood did not testify. *Id*. The jury acquitted plaintiff. *Id* at 56; Dkt. 41 at 59.

### III. STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Mere disagreement or bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Allegations based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to

resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### IV. DISCUSSION

**A.   Prosecutorial Immunity**

Defendants contend plaintiff's claims against defendant Schaap are barred by prosecutorial immunity, because they arise from his actions as an advocate. Dkt. 51 at 7–8.

Section 1983 claims for monetary damages against prosecutors are barred by absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31(1976). Prosecutorial immunity applies to conduct "intimately associated with the judicial phase of the criminal process," protecting prosecutors when performing traditional activities related to the initiation and presentation of criminal prosecutions. *Imbler*, 424 U.S. at 430–31; *accord Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005) ("[I]t is well established that a prosecutor has absolute immunity for the decision to prosecute a particular case[.]").  Allegations of, for example, malicious prosecution, conspiracy to predetermine the outcome of a proceeding, or suppression or destruction of evidence are subject to dismissal on grounds of prosecutorial immunity. *See, e.g.*, *Milstein v. Cooley*, 257 F.3d 1004, 1008-09 (9th Cir. 2001) (prosecutorial immunity covers claims of the knowing use of false testimony at trial, malicious prosecution, and suppression of exculpatory evidence); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("[A] conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors."); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 677–80 (9th Cir. 1984) (prosecutorial immunity applies to destruction of allegedly exculpatory evidence). "Such immunity applies even if it leaves 'the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.'"

REPORT AND RECOMMENDATION - 7

*Ashelman*, 793 F.2d at 1075 (*quoting Imbler*, 424 U.S. at 427). Prosecutorial immunity extends to actions during both the pre-trial and post-trial phases of the case. *Demery v. Kupperman*, 735 F.2d 1139, 1144–45 (9th Cir. 1984). However, absolute immunity is limited to a prosecutor's actions as an advocate; only qualified immunity applies when a prosecutor acts in the role of an administrator or investigative officer. *Botello*, 413 F.3d at 975–76.

Plaintiff contends defendant Schaap, who prosecuted plaintiff for his alleged violation of the no-contact order, violated plaintiff's constitutional rights by (1) failing to secure and to produce video that might have impeached Ms. Hopgood's statement that she had given plaintiff a ride to court (Dkt. 41 at 11), and (2) tardily disclosing defendant Masiello as a witness and conspiring to present his allegedly false testimony (*Id*. at 12, 46). Each of these actions was taken in defendant Schaap's role as an advocate, and each falls well within the established immunity protecting prosecutors. *See Ybarra*, 723 F.2d at 677–79 (immunity for alleged destruction of evidence); *Demery*, 735 F.2d at 1144 (immunity for inducing allegedly false testimony).

Plaintiff also contends defendant Schaap repeated allegedly false information from Ms. Hopgood in his affidavit regarding probable cause, without checking video recordings to determine whether or not it was true. Dkt. 41 at 11. Prosecutorial immunity does not apply when a prosecutor acts in the role of a complaining witness, rather than as an advocate. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). But here, defendant Schaap did not himself testify to facts that would turn him into a complaining witness under *Kalina*. Instead, he stated he was relying upon the investigation conducted by law enforcement in making the charging decision.

Defendant Schaap's affidavit of probable cause states:

> I am familiar with the investigative report in 17C3858 and the following information is contained in that report:

Dkt. 52 at 10. The affidavit then proceeds to quote directly from the report, which recounts

information provided by both Judge Buzzard and Ms. Hopgood. *Id*. But unlike the prosecutor in *Kalina*, who was found to be acting as a witness instead of an advocate, defendant Schaap does not personally vouch for the veracity of the statements. Instead, the affidavit transmits the content of the investigative report, and applies the law to the facts contained in the report to initiate a proceeding against plaintiff. In doing so, defendant Schaap acted as an advocate, rather than as a witness. *See Waggy v. Spokane Cty. Washington,* 594 F.3d 707, 713 (9th Cir. 2010) ("where a prosecutor submits a motion for a bench warrant to the court applying the law to facts alleged in supporting affidavits signed by witnesses," she is completing a judicial function and is therefore entitled to absolute immunity); *McCabe v. Hart*, 357 F. App'x 151, 152 (9th Cir. 2009) (prosecutor entitled to absolute immunity for signing complaint when he did not "'personally attest[ ]' to any facts").

Plaintiff's claims for damages against defendant Schaap are barred by prosecutorial immunity. The Court therefore recommends they be dismissed with prejudice.

**B.   Witness Immunity**

Defendants contend the claims against defendant Masiello are barred by absolute witness immunity, because his role in the no-contact order prosecution was solely as a fact witness. Dkt. 51 at 9.

Both private individuals and government officials who serve as witnesses are absolutely immune from suit for damages with respect to their testimony. *Briscoe v. LaHue,* 460 U.S. 325, 326 (1983); *Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001); *Franklin v. Terr*, 201 F.3d 1098, 1101–02 (9th Cir. 2000). Because "allowing a plaintiff to circumvent the *Briscoe* rule by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity," witness immunity also extends to conspiracies to present false testimony. *Franklin*, 201 F.3d at 1101–02 . *See also Lisker v. City of Los Angeles*, 780 F.3d

1237, 1241 (9th Cir. 2015) ("Absolute witness immunity also extends to preparatory activities 'inextricably tied' to testimony, such as conspiracies to testify falsely.").

Witness immunity "is not limitless." *Paine*, 265 F.3d at 981. Absolute immunity does not extend to "complaining witnesses," those individuals whose allegations serve to bring about a prosecution. *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *Harris v. Roderick,* 126 F.3d 1189, 1198–99 (9th Cir.1997) (police officer witnesses are not entitled to absolute witness immunity for perjured grand jury testimony that brings about a wrongful prosecution). In addition, witness immunity does not reach "'non-testimonial' acts, such as 'tampering with documentary or physical evidence or preventing witnesses from coming forward.'" *Lisker*, 780 F.3d at 1242 (*quoting Paine*, 265 F.3d at 975) (police officer not immune for claims arising from alleged falsification of physical evidence).

Defendant Masiello's role in the no-contact order prosecution was solely as a fact witness. Although Masiello was employed as a Lewis County Deputy Prosecuting Attorney, he was not the prosecutor assigned to the matter. Dkt 47 at 9. Instead, he became a witness in the matter after hearing the assigned prosecutor (defendant Schaap) discussing the case and advised he had been present in the courtroom on the day in question and had observed plaintiff sitting next to, and conversing with, Ms. Hopgood. *Id*. at 10. Defendant Masiello was not the complaining witness in the no-contact order prosecution; the probable cause affidavit relies only upon the evidence of Judge Buzzard and Ms. Hopgood. Dkt. 52 at 10. Instead, defendant Masiello provided additional fact evidence at trial. Dkt. 52 at 52.

After being disclosed as a witness, defendant Masiello was interviewed by three of plaintiff's counsel on separate occasions, and testified at trial. Dkt. 41 at 24; Dkt. 52 at 52. Plaintiff contends defendant Masiello testified falsely at trial, changing his testimony from

statements he had provided to plaintiff's previous defense counsel, and conspired with defendant Schaap to do so. Dkt. 41 at 11, 46, 52–54. Thus, plaintiff's claims arise directly out of defendant Masiello's trial testimony and are inextricably tied to it. [3] Defendant Masiello is absolutely immune from claims for damages arising out of his testimony, including claims he conspired to provide false testimony. *Briscoe*, 460 U.S. at 326; *Franklin*, 201 F.3d at 1101–02. The Court thefore recommends plaintiff's claims for damages against defendant Masiello be dismissed with prejudice.

C.  **Qualified Immunity**

Defendants argue defendants Humphrey and Mohr are protected by qualified immunity. Dkt. 51 at 10–13.

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). To prevail, plaintiff must show (1) he suffered a deprivation of a constitutional or statutory right; and (2) such right was clearly established at the time of the alleged misconduct. *Hamby v.*

---

[3] Plaintiff also asserts claims against defendant Masiello for failing to preserve video evidence. Dkt. 41 at 11, 57. But defendant Masiello's role in the no-contact order prosecution was not that of prosecutor; he was solely a witness. As such, he bore no obligation to preserve or to produce evidence. *See Smith v. Almada,* 640 F.3d 931, 939 (9th Cir. 2011) (Obligation to disclose exculpatory evidence to criminal defendants under *Brady v. Maryland,* 373 U.S. 83 (1963) applies to "prosecutors and police investigators").

*Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016). The Court may decide which step of the analysis to consider first, *Pearson*, 555 U.S. at 236, as "[f]ailing at either one will negate [Plaintiff's] eligibility to recover damages." *Hamby*, 821 F.3d at 1090.

With respect to the second prong, a defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court inquires whether the right was clearly established at the relevant time "in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. "Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).

1. <u>Defendant Humphrey</u>

Plaintiff's sole allegation against defendant Humphrey is that he failed to place defendant Masiello under oath when Massiello was interviewed by plainitiff's criminal defense counsel on January 10, 2018. Dkt. 41 at 32, 54–55. Plaintiff claims this failure violated his due process rights.[4]

There is no due process right to interview a witness in advance of trial. *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir. 1980). Thus, there can be no requirement that any such interview be conducted under oath. But even if such a right existed, the interview at issue here was conducted by plaintiff's criminal defense counsel—not by defendant Humphrey—and

---

[4] Plaintiff asserts this claim under both the Fourteenth and the Fifth Amendments. Dkt. 41 at 5, 51. However, the Fifth Amendment's Due Process and Equal Protection Clauses apply only to the federal government. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). As none of the defendants are federal actors, plaintiff's equal protection claim would arise only under the Fourteenth Amendment.

REPORT AND RECOMMENDATION - 12

counsel was fully able to request that the witness swear under penalty of perjury. Defendant Humphrey did not violate a clearly established right, and he is therefore entitled to qualified immunity.

The Court recommends plaintiff's claims for damages against defendant Humphrey be dismissed with prejudice.

2. Defendant Mohr

Plaintiff alleges defendant Mohr violated his rights to due process and to freedom from unreasonable seizure by failing to preserve parking lot video evidence that plaintiff alleges would have impeached Ms. Hopgood's statement that she had driven plaintiff to his court appearance. Dkt. 41 at 11, 54, 57.

    a. Due Process

Pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), both prosecutors and police investigators are required to disclose exculpatory evidence to criminal defendants. *See Tennison v. City & County of San Francisco,* 570 F.3d 1078, 1087 (9th Cir.2009) (allowing § 1983 claim against police inspector for *Brady* violation). To state a claim under *Brady,* the plaintiff must allege (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff. *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999). As to the prejudice prong, the Supreme Court has stated, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

*Brady* does not, however, impose "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood,* 488 U.S. 51, 57–58 (1988). Accordingly, there is no due

REPORT AND RECOMMENDATION - 13

process violation for failure to preserve "potentially useful evidence" absent a showing of bad faith. *Id*. "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015).

Here, defendant Mohr investigated the violation of a no-conact order that occurred in the courtroom and was observed and reported by Judge Buzzard, the presiding judge. Dkt. 47 at 22. During the course of his investigation, defendant Mohr received additional information from Ms. Hopgood that she had driven plaintiff to the courthouse. *Id*. It did not occur to defendant Mohr to look for video evidence to validate Ms. Hopgood's account, because his investigation was focused upon the contact in the courtroom—for which he had the evidence of Judge Buzzard. *Id*. Furthermore, it is wholly speculative whether the parking lot video would even have provided relevant information. *See* Dkt. 52 at 36 (noting the cameras had only partial and non-static views). But even if it had, and even if the footage had contradicted Ms. Hopgood's statement, it would be immaterial to whether a violation of the no-contact order had occurred in the courtroom. In short, the exculpatory value of the video was not apparent.

Under these circumstances, there is no clearly established law requiring the preservation of video evidence. Instead, case law supports the conclusion defendant Mohr did not act unreasonably. *See United States v. Robertson,* 895 F.3d 1206, 1211–12 (9th Cir. 2018) (no *Brady* violation where law enforcement agent was aware of extistence of video but not its potential exculpatory value, and exculpatory value was speculative because video offered only a partial view); *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (government did not act in bad faith in failing to preserve evidence when the exculpatory value of the evidence "was not

obvious"); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (detective's failure to gather potentially exculpatory evidence did not show bad faith where the value of the evidence was "speculative"). Defendant Mohr is entitled to qualified immunity from plaintiff's due process claim.

### b. False Arrest

Plaintiff's false arrest claim is also premised upon defendant Mohr's alleged failure to preserve video footage, which plaintiff claims would have exonerated him. Dkt. 41 at 57.

A claim for unlawful arrest or imprisonment is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification. *See Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993). A plaintiff may maintain a Fourth Amendment false arrest claim where "the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.'" *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (quoting *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004)). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223-24 (9th Cir. 2009) (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978)). The plaintiff must make a "substantial showing of deception" before the court addresses the materiality of the allegedly false statements or omissions. *Id.* at 1224. If the court reaches the issue of materiality, the plaintiff must demonstrate the judge "would not have issued the warrant with false information redacted, or omitted information restored." *Smith*, 640 F.3d at 937 (quoting *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997)).

Here, plaintiff contends probable cause was lacking because Ms. Hopgood's statement she had driven plaintiff to the courthouse could have been proved false by viewing the parking

1    lot video. Dkt. 41 at 57. But plaintiff's argument ignores the evidence of Judge Buzzard that

2    plaintiff and Ms. Hopgood were together in his courtroom. Dkt. 52 at 10–11. Even if Ms.

3    Hopgood's statement had been false, plaintiff has adduced no evidence establishing defendant

4    Mohr acted deliberately or recklessly. Defendant Mohr focused upon contact between plaintiff

5    and Ms. Hopgood in the courtroom, and Judge Buzzard's evidence of a no-contact order

6    violation in the courtroom was sufficient on its own to support plaintiff's arrest. Defendant Mohr

7    is therefore entitled to qualified immunity. *See Smith*, 640 F.3d at 938 (affirming qualified

8    immunity where even without allegedly falsified information, warrant would still have contained

9    facts sufficient to establish probable cause).

10           The Court recommends plaintiff's damages claims against defendant Mohr be dismissed

11    with prejudice.

12    **D.    Municipal Liability**

13           Defendants argue plaintiff has failed to establish his claims for municipal liability against

14    defendant Lewis County. Dkt. 51 at 19–21.

15           To state a claim against a municipality, plaintiff must allege facts showing the

16    municipality's employees or agents acted through an official custom, pattern, or policy

17    permitting deliberate indifference to, or violating, plaintiff's civil rights, or showing the

18    municipality ratified the unlawful conduct. *Monell v. New York City Dep't of Social Servs.*, 436

19    U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). To

20    establish municipality liability under § 1983, Plaintiff must show: (1) a deprivation of a

21    constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate

22    indifference to Plaintiff's constitutional rights; and (4) the policy is the moving force behind the

23    constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton v.*

24    *Harris*, 489 U.S. 378, 385-90 (1989). The Supreme Court has emphasized the unconstitutional

acts of a government agent standing alone cannot lead to municipal liability; there is no supervisory liability under § 1983. *Monell*, 436 U.S. at 692.

1. Lewis County

Plaintiff has alleged the individual defendants Schaap, Masiello, Mohr and Humphries (who are Lewis County employees) violated his rights. Dkt. 41. However, plaintiff has not alleged any County policy leading to the alleged violations. As noted above, a municipal organization cannot be held liable based solely on supervisory liability. It must have an actual policy in place that—if adhered to—violated plaintiff's rights, or must have ratified the allegedly wrongful conduct. Here, plaintiff claims only that the individual defendants *failed* to follow County policy. Dkt. 41 at 33. Because plaintiff has neither alleged a policy that violated his constitutional rights, nor submitted evidence establishing Lewis County ratified the alleged unconstitutional conduct of the individual defendants, he has not established a claim against Lewis County. Therefore, the Court recommends defendant Lewis County be dismissed with prejudice.

Defendant Lewis County was only recently added as a defendant to this lawsuit in plaintiff's amended complaint, and has not been served with process. However, Lewis County filed an answer to the amended complaint that does not raise a defense of insufficient service of process. Dkt. 42. Any defense based upon lack of service is therefore waived. Fed. R. Civ. P. 12(h)(1)(B)(ii). Accordingly, the Court has jurisdiction to rule on Lewis County's request for summary judgment, and a dismissal with prejudice is appropriate.

2. Pierce County

Plaintiff's claims against Pierce County suffer from the same fatal defect as his claims against Cowlitz County. Plaintiff does not allege any policy of Pierce County was the "moving force" behind the alleged constitutional violations. Instead, he alleges only that unnamed Pierce

County officers failed to follow municipal policy during the underlying domestic violence matter leading to the no-contact order. Dkt. 41 at 39–43. These allegations fail to establish plaintiff's rights were violated by a municipal policy and therefore fail to state a claim against Pierce County.

The Court notes Pierce County was only recently named as a defendant in this action and has neither been served with process nor appeared in this matter. Therefore, the Court lacks jurisdiction to enter summary judgment dismissing Pierce County with prejudice. *Johnson v. Meltzer*, 134 F.3d 1393, 1396 (9th Cir. 1998). However, pursuant to the Prison Litigation Reform Act ("PSLRA"), the Court may dismiss claims without prejudice at any time if they fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2) ("The court shall dismiss the case at any time if the court determines that [the action] . . . fails to state a claim on which relief may be granted."). The Court accordingly recommends the claim against Pierce County be dismissed without prejudice.

## V. CONCLUSION

For the above stated reasons, the Court recommends defendants' Motion for Summary Judgment (Dkt. 51) be GRANTED and plaintiff's claims for damages against defendants Schaap, Masiello, Humphrey and Mohr be DISMISSED with prejudice. The Court further recommends all of plaintiff's claims against defendant Lewis County be DISMISSED with prejudice and all of plaintiff's claims against unserved defendant Pierce County be DISMISSED without prejudice. To the extent that any claims for injunctive relief remain against the individual defendants, the Court finds Plaintiff has not pled facts demonstrating a real or immediate threat of any future injury. *See Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Thus, Plaintiff has not stated a claim for injunctive relief and any remaining claims for such relief should also be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on September 17, 2021, as noted in the caption.

Dated this 31st day of August, 2021.

David W. Christel
United States Magistrate Judge